The third case on our call today, Agenda No. 3, is No. 128-676, People of the State of Illinois v. Trenton Jefferson. Counsel for the Appellant, are you prepared to proceed? Please identify yourself for the record. I'm Richard J. Whitney, representing... Why don't you come up here? Richard Whitney, representing Defendant Appellant Trenton Jefferson. May it please the Court, Counsel. In this appeal, we raise two issues. First, that the Appellate Court lacked jurisdiction to even consider this state appeal under Rule 604A1. And second, that were a jury determined that the state failed to prove beyond a reasonable doubt that Mr. Jefferson was armed with a firearm and personally discharged the firearm that approximately caused the death of the victim. That collateral estoppel, the doctrine of direct and collateral estoppel, barred the state from trying to convict him and argued that he acted as to principle. With respect to the jurisdictional issue, Your Honors, I don't know that there is much more to be said that wasn't adequately covered in the briefs. But our position can be succinctly summarized as follows. This is a case in which the state wouldn't take yes for an answer and came running to the Appellate Court because it didn't like the wording or form of an order, even though it was not impaired within the meaning of the rule by the substance of the order. Rule 604A1 only confers appellate jurisdiction where an order has the substantive effect of suppressing evidence, not where it suppresses evidence in the abstract or might possibly suppress some unidentified piece of evidence in the future. This Court need only follow its precedent in In Reg KEF and Truett in following the rule that evidence is not suppressed within meaning of the rule where the only impact of the circuit court's order is on the means by which the evidence may be presented. That's what transpired here. The order primarily barred the state from arguing that proof existed beyond a reasonable doubt that Mr. Jefferson personally discharged the firearm that caused the death of the victim. As in KEF, Truett, the Crosley case we cited, the state was not denied the opportunity to present the evidence it wanted entered. It simply had to comply with the ground rules for doing so. With respect to the direct collateral estoppel issue, what I'll just call an estoppel issue for simplicity, Ashby Swenson articulated the rule. When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Now, it is true, as the state points out, estoppel must be based on a finding of ultimate fact, at least in the federal jurisprudence. Interestingly, this Court in Jones did not use that ultimate fact language. But Ash itself supports the conclusion that ultimate facts are not limited to those facts that must be proven to establish the elements of an offense, but can encompass facts or evidence used to support a theory of criminal liability. Counsel, let me ask you about the special interrogatory, because that's what we're really talking about. That's true. What was the purpose of that? Well, the purpose of the special interrogatory is to follow the rule. Well, I know in general, but in this particular case, what was the purpose of the use of the special interrogatory in this particular circumstance? It was used to make a finding as to whether or not the sentencing enhancement provision would apply. Okay. So what's your best authority that direct estoppel applies to a special interrogatory used solely for the purpose of a sentencing enhancement, like it was in this case for the apprehension? What's your best authority? Well, our best authority would be the authorities from other jurisdictions that we cited in the briefs. The Asbury case out of California dealt with a—they called it a— Okay, let's talk about Asbury. Tell me how that applies to this case. Well, in Asbury, there was a special finding that a murder did not occur during the robbery, and the state in California then tried to prosecute defendant Asbury on a theory of felony murder, and because the prior jury had already found the murder did not occur during the robbery, that barred him from being charged with felony murder. So break it down for me and apply it to the facts of this case. I know what happened in Asbury, but is that your only and best authority and that you're hanging your hat on for the estoppel argument? Well, we did cite a New York case, New York v. Julius Nassau, a concrete corporation out of the Second Circuit. But the other point I would make is that we're not relying on a body of case law showing that special interrogatories have been used in this fashion frequently. This is a rare occurrence. Our principal argument is that it touches on the basis for direct estoppel. It was still a finding on an issue of ultimate fact. It was part of the verdict. The jury had to reach a unanimous finding just the same as they did with the general verdict. They made a finding of fact. The state requested they make a finding of fact. It was part of a final judgment. It touches all of the basis, Your Honor, and that's the principal argument. We agree that there's nothing directly on point, certainly in Illinois jurisprudence, but because it touches the basis, all three of the requisites of Jones are satisfied here and the requisites, as stated in the Ash case, are satisfied here as well. And the other federal cases cited, Dattling, Balin, out of the Seventh Circuit, it's the same principle applies here. And what I would suggest is turn the question around. For what reason shouldn't it be given preclusive effect? It was just as much a unanimous finding by a jury. After due deliberation, they were instructed to deliberate until they reached a unanimous decision. It was a finding of fact. It should be given preclusive effect under straightforward application of Ash and all of the other body of case law that we have cited going back to the Horan case by this court and actually even further than that since Horan was based on a 1928 case. But the same principles are applying here. Ultimate facts are not limited to those facts that must be proven to establish the elements of the offense. It can encompass facts or evidence used to support a theory of liability. Ash itself was provided an example of that in that the precluded issue in Ash was whether Defendant Ash was physically present at the robbery, but his presence was not an inherent element of the offense. For example, if the State and Ash had alleged and had evidence that he was an accomplice, say drove the getaway car or something, he still could have been convicted of armed robbery. The elements would have been satisfied, but it was on the facts specific to that case where the State's theory was that he was one of the robbers, a principal. The verdict in case number one stopped him from being convicted under that theory or even being tried under that theory in case number two. The court in Ash did not say that collateral estoppel only applies when the prior finding of fact makes it impossible to prove an element of the offense. It took a totality-of-the-circumstances approach, using language that we have to take into account the pleadings, the evidence, the charges, and conclude whether a rational jury could have grounded its verdict upon an issue other than what the defendant seeks to foreclose, viewed in a practical frame. If the U.S. Supreme Court had wanted to limit estoppel to those circumstances in which a prior jury finding made it impossible to prove an element of the offense at the second trial, it would have said so, and it wouldn't use this totality-of-the-circumstances language, and it would have affirmed Ash's conviction. As the Dallin Court later clarified in discussing Ash, it was in the circumstances of that case that acquittal verdict could only have meant that the jury was unable to conclude beyond a reasonable doubt that the defendant was one of the bandits. This same understanding of ultimate facts is consistent with the U.S. Supreme Court's holding in Dallin, the Seventh Circuit's holding in Baylin, and this Court's holdings in Horan, Borchers, Carillo, Jones, and Ford, as well as the other cases cited in our briefs. With respect to that, Your Honors, just looking at the Borchers case, for example, that was the case in which there was a federal trial, and the defendant failed to prove that the defendant had intent to defraud the state. Then there was a state trial for theft. The essential element in the second trial was slightly different, whether he had wrongful intent to deprive the state permanently of use and benefit of the funds, but as this Court did, analyzing the case in a practical frame, the fact that he did not have malicious intent in case number one was enough to stop the state from asserting it in case number two, even though the elements were slightly different. In the Carillo case and the Brown case, much like the case at Barr, intent to kill or cause great bodily harm were not essential elements of murder because there are other ways of proving murder, just like in this case. But because the state failed to prove either type of intent in trial one, collateral estoppel barred the state from getting a second bite of the apple in trial two under either theory, not because the elements were foreclosed. And then in the Ford case, a more recent decision by this Court, the factor in mitigation that the jury found applied that turned first-degree murder into second-degree murder was not an element of the offense of murder, but it still barred the state from retrying the defendant for first-degree murder. Then we look at the Seventh Circuit jurisprudence. Feel it be Israel, the theft of a van in case number one was not an element of the conspiracy to rob a bank. It was an allegation of fact on which the state relied in order to prove an act in furtherance of the conspiracy under its theory of the case. We look at Bailyn. That was the case in which there were some 100 or so odd charges against the defendant on numerous commodity exchange violations and fraud counts, some of which there was a mistrial, so there was going to be a retrial on those counts. The retrial was not barred, but the state was prohibited from relitigating facts used to prosecute counts in which the defendants acquitted in the first trial had been acquitted in the first trial. They couldn't be reused. Counsel, let me ask you another question. Isn't this typically used to bar retrial on the charge in general as opposed to just that specific aspect of the charge here? You're not trying to bar his retrial in general. You're just trying to bar specific evidence. Correct. So that's an unusual use of this estoppel provision, isn't it? Well, I don't think it is that unusual. For example, in the Horat. Maybe not that unusual, but that's not generally how it's used. So you're not arguing that he shouldn't be retried in general. You're just arguing that certain evidence shouldn't be used and taken to its logical conclusion. Without that evidence, what does the state have, right? Well, the state would still be able to put on. Actually, in this case, as we discussed with the jurisdictional issue, it's not really barred from presenting the same evidence. It's simply barred from arguing that he acted as the principal. So the same evidence comes in, and then the state can argue that, well, he was there. So he acted as an accomplice, and he can try to prove that. So they can only use an accountability theory. Is that it? That's essentially it, yes. But I would point out, Your Honor, that, again, in the Rand case, the court did not say that the state was barred from retrying the defendant. It said that the evidence couldn't come in that had already been settled by the earlier proceeding. Similar in the Borchers case. The court did not say that he couldn't be retried. It just said you cannot use, you cannot satisfy the element of, so it would have the same effect. It may be boring in that case. And in the Valen case, which I was just talking about, again, the Seventh Circuit did not say you cannot retry these defendants on the mistried counts, but you can't use evidence that had already been settled on that. And it was very sweeping. They didn't discuss all 100 charges or whatever, but still, that was the principle. So there is certainly precedent for this. And as the court pointed out in the Valen case, collateral estoppel only applies where double jeopardy does not. In other words, it is. There's a reason why we distinguish between issue preclusion and claim preclusion, right? Double jeopardy is claim preclusion. Collateral estoppel is issue preclusion. It is, by design, more narrow. In some instances, the issue preclusion will have the same effect, but it is distinct. It has its own rules, and if the issue has been determined by a jury, by a finder of fact, then it still has to be given respect, still has to be respected, and we hope that the court will agree with us that it should have the same effect here. Again, one of the things that we don't have in this case is any articulated reason by the state to treat it differently. Other than the only basic, when all is said and done, the only thing the state points to is the plurality opinion in the Currier case, which, of course, is not binding. And as I pointed out, while this court certainly has the authority to follow the plurality opinion, this would have settled a large body of precedent and considerations of stare decisis, respect for jury findings, judicial economy all come into play here. If this court were to go that route. And again, what's missing here is not so much that there is a strong argument that's based on authority, because this is an unusual situation, concededly. So we don't have a large body of authority, but again, what reason can be articulated or has been articulated by the state to treat this finding any differently? It still satisfies the three requisites stated by this court in Jones. The issue was raised and litigated in a previous proceeding. Clearly, that happened. The determination of the issue was a critical and necessary part of the final judgment in the prior trial. The state made sure of that. The state requested it. The special interrogatory had to be given. The jury was instructed to deliberate until you reach a unanimous finding, same as with the general verdict. It was a necessary and final part of the final judgment. In fact, if Mr. Jefferson had lost on that, if the jury had found that he had personally discharged the firearm, then he would have a right to appeal. So it clearly qualifies as a final judgment. And then the issue sought to be precluded in the later trial, that's the third touchdown, is the same one decided in the previous trial. We're seeking to preclude any argument, and if there were evidence that would only go to him being principled, but the trial court found there wasn't, but we're asking that since the first jury made a finding that the state didn't prove that he personally discharged the firearm, that is exactly what we're asking to be precluded in the, well, third trial in this case. And nothing more, nothing less. That's what we're asking this court to uphold. So if there's no further questions from the court, on behalf of Mr. Jefferson, we respectfully request that this court reverse the judgment of the appellate court, affirm the judgment of the trial court, and remand this cause for further proceedings accordingly. Thank you very much. Thank you. Counsel for F. Lee, please identify yourself. Good morning, Your Honors. May it please the court, counsel. I'm Assistant Attorney General Josh Schneider on behalf of the people of the state of Illinois. And with the court's permission, I will start where the defendant left off with the estoppel question. The jury's finding of reasonable doubt as to the sentencing factor has no estoppel effect at the guilt phase of defendant's retrial for first-degree murder. And the reason for that is that the sentencing factor is not an element of first-degree murder. It is not an ultimate fact that must be proved beyond reasonable doubt to prove defendant's guilt of first-degree murder. And so at the guilt phase of the retrial, when the people are presenting evidence to try and prove the elements of first-degree murder beyond reasonable doubt, when the jury is asked to decide whether they, in fact, did prove the elements of first-degree murder beyond reasonable doubt, the sentencing factor is not a fact that the jury is asked to decide at that phase. And so, therefore, the jury's prior finding with respect to that fact has no estoppel effect at the guilt phase. Did the jury understand that? And the jury was asked this question, that the defendant was asked to decide whether or not the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person. And they said no. Did they understand the distinction that they were not deciding the guilt phase versus the sentencing phase? Yes, certainly they should have, because the instructions said that they were not to turn to that question unless they first found that he was guilty of first-degree murder. So it was clear from the instructions that the additional fact of the personal discharge of a firearm proximately causing the death, they were not to reach unless and until they first found that the defendant was guilty of first-degree murder. And so that additional fact, which is not an element of first-degree murder, they weren't asked to decide that fact to decide guilt. So counsel, let me ask you, under Dowling, then, it's your position that the jury didn't decide the ultimate issue in answering that question? That's exactly right. And clarify, what was the ultimate issue? Sure. The ultimate issue at the guilt phase is whether the defendant, or one for whose connotation is legally accountable, caused the death of the defendant. The manner that the death was caused is not an element of first-degree murder. This court explained this in People v. Sharp, where it said, even a single-shooter case, right, someone is killed by a gunshot wound, there's no accountability instruction given, there's no evidence of an additional person involved. If a jury finds that person guilty of first-degree murder, the sentence enhancement can be imposed if they then also find that he personally discharged the firearm, because it's not the same element. If it were the same, then we'd have a double enhancement problem, because the element that was intrinsic in the offense would also be then used to enhance the sentence for that offense. And Sharp said, well, that's not the case. The kind of inconsistency that I think the defendant is trying to leverage here is a sort of logical inconsistency. Well, how can he have personally, how can he be guilty on accountability or a principal theory of liability, but not have shot the victim? And that logical inconsistency isn't an inconsistency that courts recognize in this estoppel in the double jeopardy context. It's only legal inconsistency. So for the purposes of the guilt phase, the additional factor of discharging the firearm, discharging armed with a firearm, discharging a firearm that caused the death, that's not an element of the offense, and so the finding on that additional fact has no estoppel effect at the guilt phase. But in the sentencing phase on retrial, it is exactly the same facts, the same ultimate fact that the people previously failed to prove at the previous sentencing phase. And so if the people were to seek a sentence enhancement based on that same factor, that would be an unconstitutional second bite at the apple, because they'd be asking the jury to find beyond a reasonable doubt a fact that they previously failed to prove beyond reasonable doubt. And the reason that this distinction between element and non-element or between ultimate fact and evidentiary fact, ultimate fact, basic, immediate fact, the reason that distinction is dispositive of the estoppel question in this case is because of the nature of estoppel in criminal cases. In criminal cases, estoppel is a component of the double jeopardy clause. And the double jeopardy clause does one thing, and that one thing is it prevents a person from being placed in jeopardy twice for the same offense. And it has two ways of protecting people against being put in jeopardy for the same offense twice. One, as the defendant points out, one is claim preclusion and one is issue preclusion. The issue preclusion is the protection that is provided via estoppel component. But both of these protections turn on identity of elements between two offenses. So I'm acquitted of an offense in one trial. I cannot be tried for the same offense in another trial. And there's two ways that the offense in the second trial can be the same offense as the offense in the first trial. The first is the claim preclusion protection. This is sort of what we might think of as the sort of traditional double jeopardy application. That's where in the first trial I was acquitted of offense with elements A, B, and C. I am then tried in the second trial for an offense with elements A, B, and C. All of the elements of that first offense are elements of the second offense. And so no matter which element the jury in the first trial found not proved beyond a reasonable doubt, at that second trial, that second jury is going to be asked to find that same element beyond a reasonable doubt. And so, therefore, they are the same offense under this claim preclusion approach. They have the same elements. They're literally the same offense. Under the issue preclusion approach, which is the estoppel component of the double jeopardy clause, the offenses don't have the same elements. It's not A, B, and C and A, B, and C. They share only one element. Let's call it A. And that one shared element was the basis for the acquittal in the first trial. And we know that by looking at the record, as counsel put it, it's how the circumstance of the first trial, the instructions of the first trial, the evidence of the first trial. And so because I was acquitted, let's say, in that first trial of the offense A, B, and C, for a failure to prove A beyond a reasonable doubt, I can't be tried for any offense that has A as an element, whether it's AXY, AJK, because we know that I've already been acquitted on the basis of A. And that means the state is barred from retrying A beyond a reasonable doubt. Carrillo is a good example of this Court applying issue preclusion in this way under the estoppel component. So just to clarify this, so in this next trial, can the state argue and can the jury be instructed that the defendant was armed with a firearm and personally discharged the firearm that proximately caused the death to another person? The state cannot – well, so the jury cannot be instructed that he was – that he was armed with a firearm that proximately caused the death of the victim. That fact is foreclosed as an ultimate issue in the case. So that's why at sentencing – or we can't pose the sentencing enhancements in derogatory terms. In the trial section? Yes. So you agree that this jury cannot be instructed that this type of murder, where as a principle the jury cannot be instructed as to that? No, we don't agree. Because there isn't a type of murder that's personally discharged a firearm that caused the death of the victim. That's just not an element of murder. And so the jury wouldn't be instructed one way or the other on whether it has to find that he was armed with a firearm, armed with a knife, armed with anything else. All it's instructed is you need to find the defendant or one for whose conduct he was legally accountable, perform the act that caused the death of the defendant with the requisite intent. So the instruction would be either or. The defendant or someone for whom he's accountable committed these acts. Correct. For example, while I was with a firearm, personally discharged the firearm. Or any other way. The courts have been fairly clear that the method of causing death is not an element itself of murder. Again, that's sort of the logical inconsistency versus the legal inconsistency distinction. So what will the state argue in this case? Counsel said all the evidence will come in just the same as it did before. So how will the state argue this case? Presumably, well, so the same evidence won't necessarily come in. It depends on whether the evidence can also be argued supports the accountability theory. So turning briefly to the jurisdiction question, and then I'll loop back. The trial court ordered that the state is barred from presenting any evidence that defendant was armed with a firearm or personally discharged a firearm that approximately caused the death of the victim unless that evidence also would tend to support that he's accountable for someone else having shot and killed the victim. And what that means is that if there's evidence that only tends to show that he was the principal, then it's not admissible. And if there's evidence that tends to show both that he was the principal and that he was accountable for an accomplice, it's only admitted for the limited purpose of proving accountability, not for proving principle. And so what that means is that we are sort of, we have an idea of what the evidence is likely to be because we've seen these witnesses testify previously. But it relies on these witnesses testifying basically verbatim to the way they testified last time to tell whether that testimony will or will not be admissible. A good example is Howard testified that she was lying in the back seat of the car. She heard the door slam, the driver door slam. She sits up, she sees the defendant is no longer in the driver's seat and now is in front of the car. Brownlee, the co-defendant, is still in the passenger seat. She lies back down and she hears gunshots. Then the defendant gets into the car and says, I think I got it. So in your theory, both, all that testimony would be admissible. Well, the trial court said that testimony is admissible because my understanding of that testimony is that Howard was not crystal clear on exactly where Brownlee was when she heard the gunshots. So it's at least possible that maybe he was not in the car and he was the one who was shooting. Now imagine that Howard, now a decade after that testimony, testifies entirely consistently with her previous testimony but with slightly different words. So she says, I was lying in the back seat. I heard the door slam. I sat up. I saw the defendant was no longer in the driver's seat. Brownlee was still in the passenger seat. I lay back down and while I was lying in the back seat looking at the back of Brownlee's head, I heard gunshots. Well, now that testimony is inadmissible altogether because it basically is an alibi for Brownlee. Brownlee is now in the car when she hears gunshots from outside the car. So that evidence would not be admissible. Or imagine, I mean I'm not saying this happened. I imagine it's not. But imagine a hypothetical where tomorrow a defendant calls his mother in a recorded jailhouse phone call and he confesses to shooting the victim. That testimony would be inadmissible because it would be evidence that he personally shot the victim. So I would imagine that the people will argue this case very similarly to the way they did before, which is you need to find either that it was defendant or his accomplice. Counsel, help me here. Sure. How could the defendant be found guilty of first-degree murder as a principal when you retry him if it's clear that he didn't, first of all, the victim died of a gunshot wound, right? And how could defendant be found guilty as the principal if it's precluded, if the state is precluded from putting on any evidence that he fired the gun? So I guess they wouldn't be able to prove that he was guilty as a principal. That's not an element of the offense. They need to prove that it was either him or his accomplice. If the jury goes, look, we don't know which one of them it is, but we know beyond reasonable doubt that it was one of the two and not some third party for whom the defendant is not legally accountable, that's sufficient. There isn't an offense of principal murder and accountability murder. There's just murder and there are two theories of liability, but they are not sort of separate elements. I'm sorry, I feel like I might have missed a piece of your question while I was going on. I mean, it really was a pretty basic question. The victim died of a gunshot wound and you are precluded from and you want to retry the defendant and prove that he was the principal that killed this person, but you need to show that he fired a gun. How can you do that if you're precluded? That's certainly true. If the people are barred from presenting any evidence that the defendant fired a gun, then they are effectively barred from trying to argue that he caused the death in this case because the evidence would be that the death was caused by a gunshot. Let me ask a more specific question. It seems that the State was really specific in parsing the testimony that they want to preclude on retrials, such as specific testimony that either places the defendant, places a gun in the defendant's hand or places the defendant in a position where he could have fired the gun or anything of that nature. So I'm trying to figure out what are you going to do on retrial if you can't put in any of that evidence? It will be very difficult, certainly, because the State will be forced to argue with one hand behind its back. And this is one of the reasons why we don't give sentencing enhancements or special interrogatories on sentencing factors this kind of preclusive effect in the guilt phase, because it's not an element of guilt. And because even in single-shooter cases, it's not frequent, but it's not unheard of, that a jury will find a defendant guilty of having caused the death, intentionally or knowingly caused the death of a victim who was killed by gunshot. There's no accountability instruction given. There's no question. This special interrogatory was pretty straightforward, though, wouldn't you say? I mean, it basically asked a direct question and they answered no. Sure, and in that single-shooter case, we see cases where it's a single shooter and they find the person guilty of first-degree murder and they return a negative answer to exactly this special interrogatory. And what courts have recognized is that, particularly in the area of special interrogatories with respect to sentencing factors, that the possibility that a jury is exercising lenity in returning a negative response, a sort of logically inconsistent response to a sentencing interrogatory when viewed in connection with the guilt verdict, they may be exercising lenity, as they are able to do. They may be a compromised verdict, and they say, well, we found this person guilty. We think that that's enough. And that's why courts are reluctant to use special interrogatories at all in criminal cases. But let me ask another one. In this case, the special interrogatory was used to avoid the apprendee issue. An apprendee issue, or what? Why did the state choose to use it? That's exactly why. Under apprendee, if the firearm enhancement for being armed with a firearm and the person discharging the firearm at the approximate cost of the death, if that firearm enhancement is to be imposed, that fact must be found beyond reasonable doubt by the jury. And because that fact is not an element of first-degree murder, you need an additional question to the jury to see whether they found that additional sentencing factor beyond reasonable doubt. So that's exactly right. For compliance with apprendee, it was not in any way to sort of sharpen or clarify the general verdict that the jury returned of guilt. So both the claim preclusion and the issue preclusion approach both turn on the elements of the actual offense, not sort of immediate or basic or evidentiary facts that may support a finding on that ultimate fact that has to be proved beyond a reasonable doubt. Now, Defendant has argued that estoppel is not actually limited to ultimate facts in this sense, but some other sense of ultimate facts. A thing that has to be proved beyond a reasonable doubt, or maybe doesn't have to be proved beyond a reasonable doubt, is not itself an element of the offense. But this is certainly inconsistent with how this Court has applied estoppel in the double jeopardy context in Carrillo, where the Court found that a prior acquittal of attempted murder for failure to prove intent barred a subsequent trial on intentional murder which required proof of that same intent element, but didn't bar a subsequent trial for a knowing murder. Similarly, it's directly contrary to the Supreme Court's holdings in cases like Yates, Yeager, and Dowling. In Yates, the Supreme Court said, and I apologize for the quote, quote, a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts and issue in the subsequent proceeding, end quote. So far as merely evidentiary or immediate facts are concerned, the doctrine of collateral estoppel is inoperative. And then Dowling, of course, held that collateral estoppel did not apply to the case before it because, quote, the prior acquittal did not determine an ultimate issue in the present case. Now, a defendant relies primarily on Seventh Circuit's case in Byland to argue that Dowling doesn't limit estoppel to ultimate facts. But Byland says, quote, Dowling thus establishes that issue preclusion in criminal cases only applies when the relevant issue is ultimate in the subsequent prosecution, i.e., when the issue must be proven beyond a reasonable doubt. An issue that must be proven beyond a reasonable doubt in a criminal case is an element of the criminal offense. Counsel, I've got to ask this again. Brownlee, who was the co-defendant, he's dead, right? That's correct. So it either has to have been defendant or Brownlee that killed the victim. You can't try Brownlee because he's dead, and you can't put in any evidence to show the defendant actually fired the gun. So what is the State going to do if we send this case back? You know, this isn't just an exercise. I want to know just with some clarity, what do you plan to do? So I apologize, folks, because our office will not be prosecuting the case when it goes back. I know, but you're the only one here. That's true. So I'm going to give it my best shot. Based on the record at the prior trial, what I imagine the State would do would be that it would present the evidence that Howard's testimony, that defendant and Brownlee were both there and that she heard gunshots, and defendant's testimony, I think I got them because that at least arguably in the trial court's view supports a finding that Brownlee was the one who shot the victim and not defendant. If Howard testifies with any greater clarity, of course, that will exclude that evidence under the court's order, and so that evidence would not be missable. It's possible that Davis might testify with greater specificity, so some of her statements that the appellate court originally found inadmissible because they were not sufficiently relevant to a murder might come in and they might, in clarifying those statements, it's possible, although I don't know that's at all likely, that she would say that he mentioned Brownlee with respect to the killing that he felt remorse for or the killing that he told her he would kill her if she told anyone about or the killing that he went to talk the rival gang about at their hangout. But it is entirely possible that there will be almost no evidence depending on what the actual testimony ends up being that's admissible at trial. And so if there are no further questions, we ask that the court affirm the judgment of the appellate court. Thank you. Thank you, counsel. Counsel for Collins, you can apply. Thank you, Your Honor. In rebuttal, I would like to first focus on what we did not hear during the State's presentation. What we did not hear is any authority explicitly stating that the ultimate facts of the case are limited to those necessary to establish the element of the offense. I know he did cite to the Balin case, but in Balin, again, the favorably quoted rights, federal practice and procedure, direct estoppel prevents a party from relitigating a fact which was already determined against it in a decision that finally disposes of a part of a claim on the merits but does not preclude all further action on the remainder of the claim. What counsel understandably is trying to do is, again, conflate ultimate facts with elements, but it just doesn't wash with the case law. The case law does not say that. Nowhere is there any authority that says that ultimate facts are limited to elements of the offense. What we also didn't hear was any rationale for treating a jury's deliberated unanimous special interrogatory verdict any differently from its deliberated unanimous general verdict in terms of its preclusive effect. Simply observing that special interrogatories were intended to serve a different purpose, a sentencing purpose, than the general verdict does not supply a reason, and we didn't hear any reason based on justice, judicial economy, public policy, or any other underlying basis for treating these two types of verdicts any differently. A jury settled the question of fact at the defendant's last trial, and again, as Your Honor pointed out, the jury is not told that this is for sentencing purposes either. As far as I know, it's not given a clue as to why it's being asked to decide whether he personally discharged the firearm or whether the state proved this beyond a reasonable doubt, but it's still asked to deliberate and reach a unanimous finding. With respect to Justice Cunningham's question, the last question asked of counsel, what the state would presumably do on retrial would present the same evidence. Again, it's not barred from presenting any of this evidence. That was the trial court's ruling. It simply is going to be constrained to argue that this shows that he was involved in the shooting, not that he personally discharged the firearm, and that would be what the state would have to do, and that's for the purpose of giving effect to the prior jury's deliberated finding. With that, I'm not sure that there's anything else I can add. If there's no further questions, I will, again, simply conclude by asking this court respectfully to reverse the decision of the appellate court and affirm the decision of the trial court with a remand order appropriately. Thank you. Thank you very much, counsel. On this case, Agenda No. 3128676, People of the State of Illinois v. Trenton Jefferson, will be taken under advisement.